United States District Court
Southern District of Texas

**ENTERED**

September 03, 2025

Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| ABEL GARCIA-PEREZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 7:23-CV-137 |
| | § | |
| JAIME MASTERS, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## REPORT AND RECOMMENDATION

Plaintiff Abel Garcia-Perez, a state prisoner proceeding pro se, initiated this civil action against Defendants alleging various violations of his civil rights, pursuant to 42 U.S.C. § 1983. (Docket No. 1.) Specifically, he filed this action arguing that his continued incarceration based on an "out-cry" of sexual abuse by his stepdaughters is unlawful. (*Id.* at 4-6.) He alleges that Defendants' actions have violated his rights under the Fourth, Eighth, and Thirteenth Amendments of the United States Constitution. (*Id.* at 3.) Plaintiff has since been convicted in his state criminal case, on the felony charge of aggravated sexual assault of a child.[1]

Pending before the Court is Defendant Commissioner's "Motion to Dismiss," as well as her related "Motion to Strike Plaintiff's Objection to Second Motion to Dismiss."[2] (Docket Nos. 19, 27.) Defendant asserts that all of Plaintiff's claims should be dismissed for lack of subject matter jurisdiction and/or failure to state a claim for which relief can be granted. (*See* Docket

---

[1] On February 13, 2025, Plaintiff was sentenced to seven-years imprisonment, for the felony offense of aggravated sexual assault of a child. Tex. Dep't of Crim. Just., Inmate Search, https://inmate.tdcj.texas.gov/InmateSearch/viewDetail.action?sid=05381869 (last visited Aug. 29, 2025); *see also Texas v. Garcia*, No. CR-1114-22-M.

[2] Defendant Commissioner's motion to strike (Docket No. 27) will be addressed separately.

No. 19, at 3-9.)  Plaintiff has responded to the motion to dismiss; in fact, there has been some back-and-forth between the parties regarding the dispositive motion.  (*See* Docket Nos. 20, 25-27.)

After carefully considering the pleadings on file and the applicable law, the undersigned concludes that Defendant's motion to dismiss should be granted.  To begin with, Plaintiff is unable to represent his wife and children in this civil suit, given his pro se status.  In addition, Plaintiff's other claims are legally baseless, factually hollow, and/or wholly frivolous.  For example, his claims against Defendant Commissioner are barred by sovereign immunity.  In addition, Plaintiff has failed to assert any factual allegations that would defeat Defendant Commissioner also having qualified immunity in this suit.  In any event, even if Plaintiff's allegations against Defendant Commissioner could survive immunity, they would be barred by both the *Younger* Abstention Doctrine, as well as the *Rooker-Feldman* Doctrine.  Furthermore, Plaintiff's purported *Bivens* claim is frivolous.  Finally, should Plaintiff request leave to amend his original Complaint, the undersigned recommends that it be denied as futile.

In short, it is recommended that Defendant Commissioner's motion to dismiss be granted.

## I.  BACKGROUND

On April 21, 2023, Plaintiff initiated this action seeking to assert various civil rights claims pursuant to 42 U.S.C. § 1983.  (Docket No. 1.)  Plaintiff alleges that the defendants violated his civil rights by unlawfully incarcerating him, coercing his stepdaughters to make an outcry of abuse against him, separating his family, and wrongfully prosecuting him.  (*Id.* at 4-6.)  Specifically, according to Plaintiff, the basis of this case involves a false report that was made to Child Protective Services in 2021.  (*Id.*)  He further alleges that the defendants have "willingly

and intentionally cause[d] severe physical, psychological, and emotional trauma" to him.  (*Id.* at

7.)  Plaintiff describes his claim as follows:

> On or about January 29, 2021, in Mercedes, Texas, the Texas Department of Family and Protective Services initiated an investigation against [Plaintiff] on an "out-cry" or report of possible abuse or neglect by [his step-daughters] where Defendants (each on separate occasions) however, and through July 2021 did, in fact, conducted and knowingly and willingly performed interviews, questioning, and body searches on the Plaintiff's and his wife's seven (7) children, all minor children, without due process of law, without a warrant, without the presence, permission or authorization of the parents, and/or without the proper and adequate or appropriate right to remain silent or offer of legal representation or lawyer present before or during questioning.
>
> Plaintiff asserts that each named defendant and others (unnamed or unidentified defendants) caseworkers did, in fact and in bad faith, acted as law enforcement official and collected, gathered and manufactured information from the children and other unrelated or inadmissible witnesses with the sole purpose to maliciously create charges of "sex offenses" against [Plaintiff] based on coercive, fabricated, or manipulated hearsay statements while under the color of law yet not in their appropriate office of investigation.  Each defendant performed duties outside of their profession and authority and limited obligations and responsibilities as a "social worker" and not a licensed or certified police or law enforcement officer causing severe damages and injuries to the Plaintiff and three named children.  The defendants subsequently abducted and kidnapped the named children and have held the three (3) named Plaintiff's captive each against their will and subjected the children into slavery and servitude without good cause.
>
> Plaintiff claims that each named or unnamed defendants did knowingly and intentionally deprived Plaintiffs of their liberty and imposed a separation of family without the due process procedures and the incarceration of [Plaintiff] by presenting false and fabricated misinformation to a grand jury without proof beyond a reasonable doubt.

(*Id.* at 4-6 (some grammatical errors corrected).)  According to Plaintiff, Defendants actions have

violated his Constitutional rights under the following:

- Fourth Amendment's "protection from illegal search and seizure";

- Eighth Amendment's "right to protection from cruel and unusual punishment"; and

- Thirteenth Amendment's "right to protection from slavery."

(*Id.* at 3.)

"Due to the defendants' malicious and intentional actions and/or inactions the plaintiffs have suffered severe mental disorders and physical harm, . . . , including suicidal thoughts, bullying, fear, [and] abandonment." (*Id.* at 7.) As relief, Plaintiff seeks "immediate release from false imprisonment," that his stepdaughters be reunited with family members, and $150,000 in monetary damages. (*Id.*)

As noted, pending before the Court is Defendant Commissioner's motion to dismiss, which it filed on November 22, 2024.[3] (Docket No. 19.) Defendant argues that all of Plaintiff's claims should be dismissed, based on a variety of legal theories. Included—among other arguments—are that Plaintiff lacks standing to bring this lawsuit, that he may not bring claims on behalf of his wife, that the *Younger* Abstention Doctrine bars his claims, that the Commissioner is immune from the claims in this lawsuit, and that Plaintiff's allegations fail to state a claim for which relief may be granted. (*Id.* at 3-9.) In addition, the parties have had some back-and-forth in their pleadings addressing the dispositive motion. (*See* Docket Nos. 20, 25, 26.)

To be sure, Plaintiff—to his credit and notwithstanding his pro se status—has attempted to file legal responses to Defendant's arguments. (*See* Docket Nos. 20, 26.) However, much like his original Complaint, his arguments are largely hard to follow, and at times undecipherable. (*See* Docket No. 20, at 10-18; Docket No. 26.) In fact, in his first response to the motion to dismiss Plaintiff fails to address many of Defendant's specific arguments, including those regarding the *Younger* Abstention Doctrine, the Commissioner's potential immunity from suit, and the conclusory nature of his claims. (*Id.*) In addition, Plaintiff espouses new legal

---

[3] Defendant Commissioner notes that "[w]hile Plaintiff names several individuals with the Department as defendants, they have not been properly served." (Docket No. 19, at 1, n.1.) Specifically, Defendant Commissioner points out that Plaintiff "only filed a request for one summons," and that "only Commissioner Muth was served." (*Id.*)

arguments, such as those he bases on a "*Bivens* Claim" and the "*Rooker-Feldman* Doctrine." (*Id.* at 16-17.)

Defendant responded, reasserting the arguments in its motion to dismiss. (*See* Docket No. 25, at 2-10.) Defendant also addressed Plaintiff's new arguments regarding a *Bivens* claim and the *Rooker-Feldman* Doctrine. (*Id.* at 10-12.) In response, Plaintiff attempted to respond to Defendant's previous arguments based on the *Younger* Abstention Doctrine and the Commissioner's potential immunity. (Docket No. 26, at 4-8.) Defendant Commissioner has moved to strike this "sur-reply," which will be addressed separately. (*See* Docket No. 27.)

Defendant's motion to dismiss has been fully briefed. For purposes of the pending motion to dismiss, the allegations in Plaintiff's complaint will be construed in his favor. *See Turner v. Pleasant,* 663 F.3d 770, 775 (5th Cir. 2011). The motion will be considered in the context of the standard that applies under Rule 12(b) of the Federal Rules of Civil Procedure.

## II.  ANALYSIS

### A.    Motion to Dismiss Standard

In moving to dismiss, Defendant invokes both Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Docket No. 19, at 2-3.) A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges a court's subject matter jurisdiction and "may be raised by a party, or by a court on its own initiative at any stage in the litigation, even after trial and the entry of judgment." *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506–07 (2006). "Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."

5

*Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Barrera–Montenegro v. United States,* 74 F.3d 657, 659 (5th Cir. 1996)).

"The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming*, 281 F.3d at 161 (citing *McDaniel v. United States*, 899 F. Supp. 305, 307 (E.D. Tex. 1995)). Stated another way, "the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming*, 281 F.3d at 161 (citing *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)). "In examining a Rule 12(b)(1) motion, the district court is empowered to consider matters of fact which may be in dispute." *Ramming*, 281 F.3d at 161 (citing *Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir. 1981)).

On the other hand, a court may dismiss a complaint for a "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "Motions to dismiss for failure to state a claim are appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." *Ramming*, 281 F.3d at 161. Rule 12(b)(6) must be applied in light of Rule 8(a)(2), which provides that "[a] pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief." In considering a motion to dismiss, the court construes "facts in the light most favorable to the nonmoving party, as a motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant,* 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.,* 563 F.3d 141, 147 (5th Cir. 2009)).

As the Supreme Court has explained, while a complaint "does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (citations

omitted).   A plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Id*. (citation omitted).   In other words, the allegations must be sufficient to move the claim "across the line from conceivable to plausible." *Id*. at 570.   Dismissal is appropriate if the complaint fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id*.   "Determining whether the plausibility standard has been met is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009) (citation omitted)).

Under the 12(b)(6) standard, a court cannot look beyond the pleadings. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In the context of a Rule 12(b)(6) motion to dismiss, pleadings include attachments to the complaint.   *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498 (5th Cir. 2000).

It is well-established that "*pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981); *see also Hughes v. Rowe,* 449 U.S. 5, 9 (1980) ("It is settled law that the allegations of such a [pro se prisoner] complaint, 'however inartfully pleaded' are held 'to less stringent standards than formal pleadings drafted by lawyers....'") (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). While courts liberally construe the pleadings of *pro se* litigants, "[t]he right of self-representation does not exempt a party from compliance with relevant rules of procedural and substantive law." *Birl v. Estelle,* 660 F.2d 592, 593 (5th Cir. 1981) (citing *Faretta v. California,* 422 U.S. 806, 834 n.46 (1975)).   Regardless of whether a plaintiff is proceeding *pro se* or is represented by counsel,

to avoid dismissal pleadings must show specific, well-pleaded facts, not mere conclusory allegations. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).

**B.    Plaintiff's Claims on Behalf of Third Parties**

In the caption to his original Complaint, Plaintiff includes as plaintiffs three minors, which he refers to as his "children." (*See* Docket No. 1, at 1.) He later refers to "the Plaintiff's and his wife's 7 children," which include "Plaintiff's step-daughters" who made the original out-cry of sexual abuse against him. (*Id.* at 5; *see also* Docket No. 20, at 1.) Although he did not include his wife as a potential plaintiff in his Complaint, in later pleadings he implies that she has suffered the same or similar harm as their children. (*See, e.g.*, Docket No. 20, at 1 ("violations and deprivation of said rights against him, his wife, and his 7 children").) Defendant argues both that Plaintiff may not bring claims on behalf of his wife, or any of the children identified. (Docket No. 19, at 4; Docket No. 25, at 7-8.) Defendant is correct.

1.    <u>Plaintiff's Wife</u>

As Defendant points out, "[t]he U.S. Supreme Court has held that 'the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" (Docket No. 19, at 4 (quoting *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 474 (1982)).) One Court explained the legal framework for this as follows:

> [U]nder 28 U.S.C. § 1654, "parties may plead and conduct their own cases personally or by counsel" in federal court (emphasis added). "Section 1654 does not permit a non-attorney to represent a litigant in federal court and even a valid power of attorney does not permit it." Hill, 2017 WL 838267, at *2; accord Williams v. United States, 477 F. App'x 9, 11 (3d Cir. 2012) (per curiam) ("[The plaintiff's] power of attorney for her father may confer certain decision-making authority under state law, but it does not permit her to represent him pro se in federal court."); Conely v. Lee, No. A–14–CA–242–SS, 2014 WL 2722727, at *2 (W.D. Tex. June 13, 2014) ("A person may represent herself, but the law does not allow her to act as an attorney for others, even under a power of attorney."). This

> is because to proceed "pro se means to appear for one's self," and therefore "a person may not appear on another person's behalf in the other's cause." Iannaccone v. Law, 142 F.3d 553, 558 (2d Cir. 1998); accord Martin v. City of Alexandria, 198 F. App'x 344, 346 (5th Cir. 2006) (per curiam) (quoting Iannaccone, 142 F.3d at 558); Estate of Keatinge v. Biddle, 316 F.3d 7, 14 (1st Cir. 2002) ("[T]he holder of a power of attorney is not authorized to appear pro se on behalf of the grantor."). Thus, even if a layperson who initiated suit on behalf of another could show that he or she has a "personal stake" in the litigation to satisfy constitutional standing, the complaint would nevertheless suffer from a defect under § 1654 as to any claim asserted on behalf of the other. See Hill, 2017 WL 838267, at *2–3.

*McPhail v. United States*, No. 5:22-CV-253, 2022 WL 20510185, at *4 (N.D. Tex. Dec. 29, 2022), *report and recommendation adopted,* No. 5:22-CV-253, 2023 WL 5216501 (N.D. Tex. Aug. 14, 2023). Thus, a layperson who files a lawsuit on another's behalf "lacks standing," and the court therefore lacks jurisdiction over the complaint. *McPhail*, 2022 WL 20510185, at *4 (citing *Hill v. First Fin. Bank Shares*, No. 1:17-CV-0025-BL, 2017 WL 838267, at *3 (N.D. Tex. Mar. 2, 2017) (string cite omitted); *see also Umstead v. Chase Manhattan Mortg. Corp.*, No. 7:04-CV-747, 2005 WL 2233554, at *2 (W.D. Va. Sept. 13. 2005) ("It follows from the rule prohibiting lay representation that any pleadings filed through lay representation must be disregarded as a nullity.").

To begin with, it is not entirely clear that Plaintiff intended to include his wife as a plaintiff in this civil suit. Although he intimates that his wife suffered "violations and deprivation of [ ] rights" similar to him; unlike their children, Plaintiff did not list his wife as a potential plaintiff in his original Complaint. (*Compare* Docket No. 1, at 1, *with* Docket No. 20, at 1.) In fact, Plaintiff's claims on behalf of his wife—assuming they are included—are sparse,

vague, and general.[4]  (*See* Docket Nos. 1, 20, 26.)  Specifically, Plaintiff's pleadings focus on himself, as well as his children.  (*See* Docket Nos. 1, 20, 26.)

Accordingly, Plaintiff's claims on behalf of his wife should be dismissed without prejudice for lack of subject matter jurisdiction.  Of course, the dismissal of the claims without prejudice affords her the right to reassert any claims on her own behalf (if she so chooses).

2.    Plaintiff's Children

As noted, Plaintiff initiated this action on behalf of himself and his minor children. (Docket No. 1, at 1.)  Defendant contends that Plaintiff, as a non-lawyer pro se litigant, cannot prosecute the claims filed on behalf of his wife, or his minor children.  (Docket No. 19, at 4; Docket No. 25, at 7-8.)  Plaintiff did not respond to Defendant's legal argument specifically; however, in his responses to the motion to dismiss he argues—in general—that he should be allowed to pursue his claims in this lawsuit.  (*See* Docket Nos. 20, 26.)

It is undisputed that Plaintiff may proceed pro se in this action as to his own claims. "The right to proceed *pro se* in civil actions in federal court is guaranteed by 28 U.S.C. § 1654." *Harris v. Apfel*, 209 F.3d 413, 415 (5th Cir. 2000).  As a general matter, it is also true that a parent, such as Plaintiff, may sue on behalf of his minor children as "a next friend" pursuant to Rule 17(c)(2).[5]

---

[4] As Plaintiff's allegations relate to specifically to his wife, there is not much for the Court to seize on.  As noted, plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. 555-56.  Regardless of whether a plaintiff is proceeding *pro se* or is represented by counsel, to avoid dismissal pleadings must show specific, well-pleaded facts, not mere conclusory allegations. *Guidry*, 954 F.2d at 281.  At this stage of the litigation, Plaintiff's allegations as they relate to his wife do not appear to rise above the speculative level.  Stated another way, it is hard to see Plaintiff's claims—on behalf of his wife—surviving the legal standard for a Rule 12(b)(6) motion to dismiss.

[5]   Whether or not Plaintiff is in fact an appropriate "next friend" for his minor children need not be resolved in deciding Defendant's motion to dismiss.  To begin with, Plaintiff does . . . *continued on next page.*

Defendant Commissioner's motion raises a different issue.  That is, whether a non-attorney, such as Plaintiff, may appear pro se on behalf of his children.  In *Harris*, the Fifth Circuit noted that the Second Circuit and other courts have "held that a non-attorney parent must be represented by counsel to sustain an action on behalf of a child."  209 F.3d at 417 (citation omitted).  The rationale for this rule is "that it is not in the interests of minors to be represented by non-attorneys; rather, minors are entitled to trained legal assistance to fully protect their rights."  *Id*. (citation omitted).  While not disagreeing with this analysis, the Fifth Circuit considered whether the same rule should be applied in the context of the appeal of an administrative decision denying social security benefits.  Emphasizing the unique nature of Social Security appeals, the Fifth Circuit ultimately held that "a non-attorney parent be permitted to sustain a *pro se* action on behalf of a minor child in SSI [Supplemental Security Income] appeals."  209 F.3d at 417.

Although the Fifth Circuit allowed a parent to appear pro se on behalf of a child in a Social Security appeal, the court also appeared to cite with approval decisions by the Second Circuit holding "that a non-attorney parent must be represented by counsel to sustain an action on behalf of a child in a racial discrimination case and in a case alleging violations of the

---

not assert that he is trying to proceed with this lawsuit as "next friend" to his children.  Perhaps more importantly, Plaintiff has wholly failed to establish that it would be appropriate for him to seek "next friend" status.  *See Schreck by and through Schreck v. City of Amarillo*, No. 2:21-CV-220, 2021 WL 5178855, at *2 (Nov. 8, 2021) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 164 (1990) (to seek "next friend" status the plaintiff must show "inaccessibility, mental incompetence, or other disability—why the real party in interest cannot appear on his own behalf to prosecute the action")).  Nor does Plaintiff allege that the children do not have a current legal guardian.  *See Schreck*, 2021 WL 5178855, at *2 (citing FED. R. CIV. P. 17(c) (lack of "a general guardian or a duly appointed representative" is another reason to seek "next friend" status)).  Quite the opposite, Plaintiff admits that the children are in the custody of the State of Texas.  Put simply, Plaintiff has not attempted to satisfy that he is an appropriate "next friend" for the minor children.

Individuals with Disabilities Education Act and Rehabilitation Act." *Id*. at 415 (citing *Wenger v. Canastota Cent. Sch. Dist.*, 146 F.3d 123 (2d Cir. 1998) (overruled in part on other grounds); *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990)). As the Fifth Circuit acknowledged, "other federal courts have held, albeit outside the social security context, that a non-attorney parent cannot appear pro se on behalf of a minor child." *Id*. at 415 n.3 (citing decisions by the Eleventh, Ninth, Third, and Tenth circuits).[6]

Not surprisingly, in light of the Fifth Circuit's analysis in *Harris* and the great weight of authority from other federal courts, district courts throughout the Fifth Circuit have recognized the widely-accepted rule in civil cases that non-attorney pro se parents cannot represent their minor children outside of the context of SSI appeals. *L.F. v. Hous. Indep. Sch. Dist.*, No. 08-2415, 2009 WL 3073926, at *13 (S.D. Tex. Sept. 21, 2009); *A.A. v. Hous. Indep. Sch. Dist.*, No. 10-3394, 2011 WL 181356, at *3 (S.D. Tex. Jan. 19, 2011); *Rodriguez v. EMC Mortg. Corp.*, No. 02-CA-789, 2003 WL 22097231, at *1 (W.D. Tex. Aug. 13, 2003). On the other hand, the Fifth Circuit recently held that 28 U.S.C. § 1654 does not include an "absolute bar" against pro se parents representing their children in court. *Raskin on behalf of JD v. Dallas Indep. Sch. Dist.*, 69 F.4th 280, 286 (5th Cir. 2023). Notably, the Fifth Circuit in *Raskin* found that "where a state has decided that *pro se* parental representation *does* adequately protect children's rights," the court should not "interfere absent extenuating circumstances." *Id.* (emphasis in original). In making this finding, the Fifth Circuit noted that appointing a guardian ad litem may be appropriate "when it appears that the minor's general representative has interests which may

---

[6] In addition to the Second Circuit, other federal courts of appeals have likewise held that non-attorney parents cannot appear pro se on behalf of their minor children. *Devine v. Indian River Cnty. Sch. Bd.*, 121 F.3d 576 (11th Cir. 1997) (overruled in part on other grounds); *Johns v. Cnty. of San Diego*, 114 F.3d 874 (9th Cir. 1997); *Osei-Afriyie v. Med. Coll. of Pa.*, 937 F.2d 876 (3d Cir. 1991); *Meeker v. Kercher*, 782 F.2d 153 (10th Cir. 1986).

conflict with those of the person he is supposed to represent." *Id.* (quoting *Hoffert v. Gen. Motors Corp.*, 656 F.2d 161, 164 (5th Cir. Unit A 1981)). This has particular relevance here, given that when the State removed Plaintiff's children from his household and placed them in protective custody, they inherently found that his interests did conflict with those of the children. This is not surprising given the fact that the State removed the children from Plaintiff's home based on an out-cry of sexual abuse against him.

The rule articulated by the Fifth Circuit in *Harris* should be applied here. Plaintiff is attempting to file numerous complicated state and federal law claims on behalf of his minor children, all of which may require "subjective criteria" and extensive "fact-finding." *See Harris*, 209 F.3d at 416. As such, the minor children are entitled to "trained legal assistance so their rights may be fully protected." *See Cheung*, 906 F.2d at 61. In addition, as the origin for the underlying legal proceedings that are the basis of this lawsuit is the sexual abuse out-cry that Plaintiff's daughters made against him, his attempt to represent them, pro se in this lawsuit, is in direct conflict with their interests, and should not be allowed.

As such, Plaintiff's claims on behalf of his minor children should be dismissed without prejudice for lack of subject matter jurisdiction.[7] Here again, the dismissal of the claims without

---

[7] To put it mildly, some of Plaintiff's allegations on behalf of his children, stretch the bounds of credulity. *See McPhail*, 2022 WL 20510185, at *5 ("Here, the Complaint is factually frivolous because the fantastical . . . allegations therein are wholly incredible.") (citing *Watson v. Tex. State Univ.*, 829 F. App'x 686 (5th Cir. 2020)). For example, Plaintiff alleges that the State's removal of the children from his home, based on allegations of sexual abuse against him, amount to both "abduct[ion] and kidnap[ing]." (Docket No. 1, at 6.) He continues that this also supports his contention that Defendants have "subjected the children into slavery and servitude without good cause." (*Id.*) "Here, the Complaint is factually frivolous because the fantastical . . . allegations therein are wholly incredible." *McPhail*, 2022 WL 20510185, at *5 (citing *Watson v. Tex. State Univ.*, 829 F. App'x 686 (5th Cir. 2020)).

prejudice will afford them the right to reassert their claims with the assistance of licensed legal counsel (if they so choose).[8]

## C.    Plaintiff's Claims on his Own Behalf

Remaining are the claims that Plaintiff is asserting on his own behalf.  Although he identifies violations of the Fourth Amendment (illegal searches and seizures), the Eighth Amendment (cruel and unusual punishment), and the Thirteenth Amendment (slavery), it is clear from his original Complaint that his primary claim is his incarceration for sexually assaulting his step-daughters.  (*See* Docket No. 1, at 4-6.)  According to Plaintiff, due to an "out-cry" of sexual abuse that his step-daughters made against him personally, the Texas Department of Family and Protective Services removed all of the children from his home, and he was arrested by local law enforcement.  He further alleges that his incarceration is the direct result of "false and fabricated misinformation [being presented to] a grand jury without proof beyond a reasonable doubt."  (*Id.* at 6.)  Not surprisingly, he seeks monetary damages and his "immediate release from false imprisonment."  (*Id.* at 7.)  Plaintiff's remaining claims on his own behalf fail for multiple reasons.

### 1.    The Commissioner's Immunity

In its motion to dismiss, the Defendant argues that "Plaintiff's claims against Commissioner are barred by different types of immunity depending on which capacity she is sued."  (Docket No. 19, at 6.)  Specifically, Defendant argues that if Commissioner is sued [i]n her official capacity, the claims are barred by the Eleventh Amendment to the U.S. Constitution."  (*Id.* at 6-7.)  On the other hand, Defendant argues that "[i]n her individual capacity, the claims

---

[8]  The undersigned expresses no opinion on whether the minor children should or would choose to assert any claims if assisted by competent counsel.

are barred by qualified immunity because Commissioner is a state official." (*Id.* at 7-8.) Plaintiff addresses Defendant's immunity arguments—albeit in a general manner—in his responses. (*See* Docket No. 20, at 8-12 (qualified immunity); Docket No. 26, at 6-8 (sovereign immunity).)

As both the Fifth Circuit and the Supreme Court have held, "[t]he eleventh amendment generally divests federal courts of jurisdiction to entertain citizen suits directed against states." *Thomas v. Tex. Dep't of Fam. & Protective Servs.*, 427 F. App'x 309, 312 (5th Cir. 2011) (quoting *Stem v. Ahearn,* 908 F.2d 1, 3 (5th Cir. 1990) (citing *Port Auth. Trans–Hudson Corp. v. Feeney,* 495 U.S. 299 (1990))). "Similarly, suits against employees of state entities in their official capacity run afoul of the Eleventh Amendment." *Thomas*, 427 F. App'x at 312 (citing *Stem*, 908 F.2d at 3). "As such, Plaintiff cannot sue TDFPS and CPS, both agencies of the State of Texas, for monetary damages arising from alleged civil rights violations." *Carr v. Texas Dep't of Fam. & Protective Servs.*, No. 3:19-CV-876, 2020 WL 7048669, at *3 (N.D. Tex. Sept. 23, 2020) (citing *Thomas*, 427 F. App'x at 312) (concluding DFPS "is undisputedly a state entity that has not waived its immunity"). "Moreover, to the extent [Plaintiff] brings this action against the [Commissioner and] named CPS case workers in their official capacities for monetary relief, those claims should likewise be dismissed." *Carr*, 2020 WL 7048669, at *3 (citing *Thomas*, 427 F. App'x at 313 (dismissing official capacity claims against DFPS employees because they were immune from suit in their official capacities); *see also Swindle v. Livingston Par. Sch. Bd.*, 655 F.3d 386, 399 (5th Cir. 2011) ("Sovereign immunity also extends to state officials sued in their official capacity for monetary relief.").

Finally, it is the plaintiff's burden to establish a state's waiver of sovereign immunity. *Daniel v. Univ. of Tex. Sw. Med. Ctr.*, 960 F.3d 253, 256 (5th Cir. 2020). Plaintiff has not made

any attempt to establish that waiver here. Accordingly, his claims against Defendant Commissioner in her official capacity are barred by sovereign immunity and should be dismissed for lack of jurisdiction.

Next, "[q]ualified immunity protects state officials from civil damages liability 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Thomas*, 427 F. App'x at 313-14 (quoting *Pearson v. Callahan*, 555 U.S. 223 (2009)). As the Supreme Court has established, the court "must undertake a two-step inquiry to determine whether the official is entitled to immunity, asking: (1) whether the plaintiffs have alleged facts sufficient to establish a violation of a constitutional right; and (2) whether that right was 'clearly established' at the time of the defendant's alleged misconduct." *Thomas*, 427 F. App'x at 313-14 (citing *Pearson,* 129 S.Ct. at 815–16). The two prongs may be addressed in either order. *Id.* In determining whether there has been a violation of a constitutional right, the court should "employ currently applicable constitutional standards." *Thomas*, 427 F. App'x at 314 (quoting *Wernecke v. Garcia,* 591 F.3d 386, 392 (5th Cir. 2009)). "On the 'clearly established' inquiry, we have noted that '[o]fficials should receive the protection of qualified immunity 'unless the law is clear in the more particularized sense that reasonable officials should be 'on notice that their conduct is unlawful.'" *Thomas*, 427 F. App'x at 314 (quoting *Wernecke,* 591 F.3d at 393).

Insofar as Plaintiff sues Defendant Commissioner in her individual capacity, he has failed to plead a plausible civil rights violation. Here, Defendant argues that "Plaintiff has not overcome Commissioner's immunity" because:

- He "did not allege any specific facts regarding any specific acts that Commissioner did to show that she violated a statutory or constitutional right";

- "[O]ther than being named as a defendant, Commissioner's name appears nowhere" in the Complaint; and

- "Plaintiff does not identify any specific actions Commissioner took."

(Docket No. 19, at 8.)  Defendant Commissioner is correct.  Plaintiff's allegations do not even begin to assert any specific actions of the Commissioner that could be liberally construed as a violation of his civil rights.[9]  As one Court succinctly put it, Plaintiff's "broad-based [ ] allegations [ ] lack factual enhancement." *Carr*, 2020 WL 7048669, at *3.

The facts—or lack thereof—alleged by Plaintiff fall far short of "rais[ing] a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Put another way, his allegations are insufficient to move this claim "across the line from conceivable to plausible." *Id*. at 570.  This is particularly true since Plaintiff has not alleged that Defendant Commissioner was personally involved in his case.  In sum, because Plaintiff has failed to present more than "naked assertion[s]" devoid of "further factual enhancement," *Twombly*, 550 U.S. at 557, his claims against Defendant Commissioner fail to defeat qualified immunity, and the claims should be dismissed for failure to state a claim.[10]

---

[9] Plaintiff's "children were the subject of a state-court suit affecting the parent-child relationship ("SAPCR") in which the Texas Department of Family and Protective Services ("DFPS") sought to terminate [Plaintiff's] parental rights." *See Connor v. Deckinga*, No. 4:10-CV-855, 2011 WL 13229439, at *1 (N.D. Tex. Oct. 6, 2011).  "The mere fact that the underlying dispute arose from an issue concerning a parent—child relationship does not [in and of itself] destroy a federal court's jurisdiction over a properly pleaded constitutional claim." *Thomas*, 427 F. App'x at 313.

[10] As noted, Defendant Commissioner states that Plaintiff did not—and has not—properly served any defendant, other than the Commissioner herself.  (Docket No. 19, at 1, n.1.)  Although Plaintiff has named multiple defendants, the record shows that he only attempted service on one; namely, the Commissioner.  (*See* Docket Nos. 12-14, 16.)  As such, Defendant Commissioner is the only defendant that has responded to Plaintiff's original Complaint, and more importantly, filed a dispositive motion.  In any event, upon review of Plaintiff's allegations . . . *continued on next page.*

2.    The *Younger* Abstention Doctrine

Next, Defendant Commissioner argues that this action is barred by the Abstention Doctrine of *Younger v. Harris*, 401 U.S. 37 (1971).  (Docket No. 19, at 4.)  Defendant asserts that because "Plaintiff complains about actions in ongoing state court proceedings," they are not properly raised here.  (*Id.* at 4-6.)  Plaintiff failed to respond—initially—to this argument, which prompted Defendant to later argue that his failure "constitutes waiver or abandonment" of the issue.[11]  (Docket No. 25, at 4.)  Although not specifically addressing the waiver or abandonment issue, Plaintiff later responded arguing that the *Younger* Doctrine "does not apply because the Plaintiff's Complaint seeks redress of relief based on the physical, psychological, and emotional trauma inflicted on the spouse and children while in the care of the [State of] Texas.  (Docket No. 26, at 5.)

In *Younger*, the Supreme Court held that a federal court must abstain from enjoining a state criminal proceeding.  404 U.S. at 52-55.  The Supreme Court later extended the ruling in *Younger* to "non-criminal judicial proceedings when important state interests are involved." *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). Specifically, the Supreme Court has explained:

> Proceedings necessary for the vindication of important state policies or for the functioning of the state judicial system also evidence the state's substantial interest in the litigation. *Trainor v. Hernandez*, 431 U.S. 434 (1977); *Juidice v. Vail*, 430 U.S. 327 (1977). Where vital state interests are involved, a federal court should abstain "unless state law clearly bars the interposition of the constitutional

against the other state defendants, they would likely befall the same fate as the allegations made against the Commissioner, for the reasons stated in this report.

[11] To be fair, in his response to the motion to dismiss, Plaintiff did include a section addressing the *Rooker-Feldman* Doctrine.  (Docket No. 20, at 16-17.)  It is not entirely clear, but in fairness Plaintiff may have included this section in response to Defendant's *Younger* Abstention argument.  In any event, the undersigned addresses Plaintiff's *Rooker-Feldman* Doctrine argument below.  *See infra* Part II.C.3.

claims." *Moore*, 442 U.S. at 426. "[T]he ... pertinent inquiry is whether the state proceedings afford an adequate opportunity to raise the constitutional claims ...." *Id.* at 430. *See also Gibson v. Berryhill*, 411 U.S. 564 (1973).

*Middlesex*, 457 U.S. at 432.  "The Fifth Circuit has concluded that *Younger* and *Middlesex* required a federal district court to abstain where (1) the dispute involves an "ongoing state judicial proceeding," (2) an important state interest in the subject matter of the proceeding must be implicated, and (3) the state proceedings must afford an adequate opportunity to raise constitutional challenges to overcome the presumption in favor of abstention." *Shipula v. Texas Dep't of Fam. Protective Servs.*, No. H-10-CV-3688, 2011 WL 1882521, at *9 (S.D. Tex. May 17, 2011) (citing *Wightman v. Texas Supreme Court*, 84 F.3d 188, 189 (5th Cir. 1996)).

Here, regarding the underlying state criminal proceedings against Plaintiff for the alleged sexual abuse of his children, the *Younger* abstention is proper under these criteria.  To begin with, this is precisely the type of situation that the Supreme Court in *Younger* was addressing; specifically, a state criminal proceeding (first prong).[12]  *See Younger*, 404 U.S. at 52-55.  Not surprisingly, Defendant Commissioner's arguments based on the *Younger* Abstention Doctrine focus on the state civil actions that concern his children.  Notwithstanding this, Defendant points out that through his criminal proceedings "Plaintiff has an adequate opportunity to raise his constitutional challenges."  (Docket No. 25, at 6 (addressing the third prong).)  Plaintiff has failed to show, or allege, that "the state court is unwilling or unable to address such claims." (*Id.*)  Furthermore, "[t]o the extent that [plaintiff] argues that he has been unsuccessful or is likely to be unsuccessful in raising his constitutional claims in state court[,] that is irrelevant." *Gates v. Strain*, 885 F.3d 874, 880 (5th Cir. 2018).

---

[12] Defendant Commissioner requests that the Court take judicial notice of Plaintiff's underlying criminal proceedings in state court.  (*See* Docket No. 19, at 5; Docket No. 25, at 5.)

Next, as to the underlying state-court suit affecting the parent-child relationship ("SAPCR") in which the Texas Department of Family and Protective Services ("DFPS") sought to terminate [Plaintiff's] parental rights, the *Younger* abstention is likewise proper under the criteria. Satisfying the first prong of the test, Plaintiff makes repeated admissions in his original Complaint about the ongoing state judicial proceedings regarding the custody of his children.[13] (Docket No. 1, at 5-6.) More importantly, he asks this Court to reverse the state court's decision and return the children. (*Id.* at 7.) In addition, under the second prong, the Supreme Court has historically, and repeatedly found, that family and child custody matters are important state interests as a matter of law. *See Moore v. Sims,* 442 U.S. 415, 434 (1979); *see also Ex Parte Burrus,* 136 U.S. 586, 593–94 (1890). "Furthermore, application of the *Younger* Abstention Doctrine to domestic relations cases is obvious and proper." *Shipula*, 2011 WL 1882521, at *9 (citing *Crouch v. Crouch,* 566 F.2d 486, 487 (5th Cir. 1978), and *Jagiella v. Jagiella,* 647 F.2d 561, 564 (5th Cir. 1981)).

For the final prong, Plaintiff must show that he had no opportunity to litigate the purported federal issues in state court. *DeSpain v. Johnston,* 731 F.2d 1171, 1178 (5th Cir. 1984). According to Defendant, "as a matter of law, 'Texas law is apparently as accommodating as the federal forum . . . [A]bstention is appropriate unless state law *clearly bars the interposition of the constitutional claims*.'" (Docket No. 19, at 5 (emphasis in original) (quoting *Moore,* 442 U.S. at 425–26).) The Supreme Court in *Middlesex* went on to explain that "[m]inimal respect for the state processes, of course, precludes any presumption that the state courts will not safeguard federal constitutional rights." *Middlesex,* 457 U.S. at 431. Stated another way, "[a]

---

[13] Defendant Commissioner also requests that the Court take judicial notice of Plaintiff's underlying state-court suit affecting the parent-child relationship ("SAPCR"). (*See* Docket No. 19, at 5 & n.2; Docket No. 25, at 5.)

federal court 'should assume that state court procedures will afford an adequate remedy in the absence of unambiguous authority to the contrary.'"  *Shipula*, 2011 WL 1882521, at *9 (quoting *Pennzoil Co. v. Texaco, Inc.,* 4381 U.S. 1, 15 (1987)).  Here, Plaintiff has not alleged any facts showing that he was barred from raising his constitutional concerns in the state court proceedings.

Because all the elements for abstention are met, Defendant is entitled to a dismissal of this lawsuit under Rule 12(b)(1).

3.    The *Rooker-Feldman* Doctrine

In his response to Defendant's motion to dismiss, Plaintiff includes what he refers to as the "*Rooker-Feldman* Doctrine."    (Docket No. 20, at 16-17.)    He argues that the doctrine "applies where the challenge to a state court decision involves federal constitutional issues."  (*Id.* at 16.)  Defendant argues that the *Rooker-Feldman* Doctrine "does not support any of Plaintiff's claims," nor does it "support this Court retaining any of [his] claims."  (Docket No. 25, at 10.)

"*Rooker-Feldman* 'prohibits federal courts from adjudicating cases brought by state-court losing parties challenging state-court judgments.'"  *Wood v. Patton*, No. 25-70004, 2025 WL 2237942, at *3 n.8 (5th Cir. Aug. 6, 2025) (quoting *Reed v. Goertz*, 598 U.S. 230, 235 (2023)).  "A federal complainant cannot circumvent this jurisdictional limitation by asserting claims not raised in the state court proceedings or claims framed as original claims for relief."  *United States v. Shepherd*, 23 F.3d 923, 924 (5th Cir. 1994).  "Even though a 'state-court decision is not reviewable by lower federal courts, a statute or rule governing the decision may be challenged in a federal action.'"  *Reed*, 598 U.S. 235 (quoting *Skinner v. Switzer*, 562 U.S. 521, 532 (2011)).  "If the district court is confronted with issues that are 'inextricably intertwined' with a state judgment, the court is 'in essence being called upon to review the state-court decision,' and the

originality of the district court's jurisdiction precludes such a review." *Shepherd*, 23 F.3d at 924 (quoting *Dist. of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462, 482 n.16 (1983)).

"The *Rooker-Feldman* doctrine has four elements: '(1) a state court loser; (2) alleging harm caused by a state-court judgment; (3) that was rendered before the district court proceedings began; and (4) the federal suit requests review and reversal of the state court judgment.'" *See Shaikh v. Allen City Council*, No. 4:21-CV-953, 2023 WL 2518908, at *6 (E.D. Tex. Feb. 8, 2023) (quoting *Burciaga v. Deutsche Bank Nat'l Tr. Co.*, 871 F.3d 380, 384 (5th Cir. 2017)). The Fifth Circuit has held that "litigants may not obtain review of state court actions by filing complaints about those actions in lower federal courts cast in the form of civil rights suits." *Turner v. Cade*, 354 F. App'x 108, 111 (5th Cir. 2009); *see also Liedtke v. State Bar of Texas*, 18 F.3d 315, 317-18 (5th Cir. 1994). Although it has been raised by the parties, *Rooker-Feldman* is a jurisdictional doctrine that the Court can raise sua sponte." *See Union Planters Bank Nat'l Ass'n v. Salih*, 393 F.3d 457, 460 (5th Cir. 2004).

Here, neither Plaintiff nor Defendant Commissioner assert that the underlying criminal proceeding, or underlying state-court suit affecting the parent-child relationship ("SAPCR") are "ongoing [or] that there is no final judgment." *See Shipula*, 2011 WL 1882521, at *8 (indicating that the *Rooker-Feldman* Doctrine is inapplicable if there is no final judgment). To the contrary, Defendant Commissioner asserts that there has been a "Final Order issued by the 430th Judicial District Court in Hidalgo County, Texas," related to the SAPCR suit. (Docket No. 25, at 9 n.7.) In addition, Plaintiff argues that the "general constitutional challenge [that he asserts in this civil rights action] does not require review of a final state court decision," such that would be precluded by the *Rooker-Feldman* Doctrine. (*See* Docket No. 20, at 17.)

In any event, "[r]elevant to the present case, federal courts have consistently applied the *Rooker-Feldman* doctrine as a bar to federal jurisdiction over claims related to family disputes in state court, including child custody matters." *Shaikh*, 2023 WL 2518908, at *7 (string citation omitted). The *Rooker-Feldman* doctrine should likewise bar Plaintiff from disguising his challenge to the underlying SAPCR suit as a civil rights lawsuit in this Court.[14]

4.    *Bivens* Claim

In his response to Defendant Commissioner's motion to dismiss, Plaintiff peculiarly includes what he refers to as a "Bivens Claim." (Docket No. 20, at 16.) He explains that in Bivens, "the Supreme Court established a private action for monetary damages resulting from the violation of a constitutional right by federal agents or employees acting under color of federal law." *Id.* (citing *Arar v. Ashcroft*, 585 F.3d 559, 571-72 (2d Cir. 2009)). Plaintiff provides no other explanation for this new claim. Not surprisingly, Defendant argues that this claim should be rejected because it is not properly before the Court. (Docket No. 25, at 12-13.) Here again, Defendant is correct.

The Supreme Court, in 1971, recognized an implied right of action "to sue federal officers for violating an arrestee's rights" under limited circumstances. *Cantu v. Moody*, 933 F.3d 414, 421 (5th Cir. 2019) (quoting *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 389-90 (1971)). "The effect of *Bivens* was, in essence, to create a

---

[14] Although neither party argues that Plaintiff filed this suit before any state court judgment was final, this would not allow him to evade the *Rooker-Feldman* doctrine here. As one court put it, if the state court judgment became final while this lawsuit was pending, Plaintiff would still be "the classic state court loser attempting to undo the effects of an unfavorable final judgment." *Smith v. Texas Dep't of Child Protective Servs.*, No. H-18-CV-3470, 2019 WL 3472867, at *5 (S.D. Tex. July 11, 2019). "As there [ ] now [appears to be] a final state court judgment, the court must give preclusive effect to it." *Smith*, 2019 WL 3472867, at *5 (citing 28 U.S.C. § 1738).

remedy against federal officers, acting under color of federal law, that was analogous to the section 1983 action against state officials." *Dean v. Gladney*, 621 F.2d 1331, 1336 (5th Cir. 1980).

However, "[a] claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) (citing *Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990)).  As Defendant makes clear, that is what Plaintiff has done here.

Notwithstanding the fact that Plaintiff's *Bivens* claim is not properly before the court, it also wholly lacks any factual and/or legal support.  To begin with, none of Plaintiff's claims allege that any federal actors were involved.  Nor does Plaintiff attempt to tie his allegations to the actions of any federal officers.  That is problematic to say the least.  The Fifth Circuit has held that because a plaintiff's "complaint did not assert any claims against federal actors," it could not proceed "under *Bivens*."  *Arvie v. Cathedral of Faith Missionary Baptist Church*, No. 24-30759, 2025 WL 1565149, at *7 (5th Cir. June 3, 2025).  In addition, a claim is frivolous when it is "so lacking in merit that it [is] groundless."  *Raskin*, 69 F.4th at 287 (quoting *United States v. Mississippi*, 921 F.2d 604, 609 (5th Cir. 1991)).  That is likewise the case here, and the Court should reject Plaintiff's purported claim under *Bivens*.

5.    Leave to Amend

To be sure, Plaintiff has not requested leave to amend his pleadings.  Notwithstanding that, Defendant Commissioner argues that "Plaintiff cannot use a response to a motion to dismiss as an opportunity to amend his original complaint."  (Docket No. 25, at 12.)

"Generally 'a *pro se* litigant should be offered an opportunity to amend his complaint before it is dismissed.'" *Carr*, 2020 WL 7048669, at *4 (quoting *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009)). "However, the Court is not required to grant leave to amend 'if the plaintiff has already pleaded his 'best case.'" *Carr*, 2020 WL 7048669, at *4 (quoting *Brewster*, 587 F.3d at 767-68); s*ee also Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 329 (5th Cir. 2002) (plaintiffs should be given an opportunity to amend, unless it is clear that to do so would be futile); *United States ex rel. Steury v. Cardinal Health, Inc.,* 625 F.3d 262, 270 (5th Cir. 2010) ("futility of a proposed amendment" is cause to deny leave to amend).

There are two reasons that the District Court should not grant Plaintiff leave to amend his original Complaint. First, Plaintiff has had ample opportunity to amend his pleadings, but he has failed to do so. This is evidenced by his numerous responses to Defendant Commissioner's motion to dismiss. Despite the opportunity to amend his complaint and clarify his claims, Plaintiff has been unable to cure the defects in his pleadings. Because Plaintiff is unable or unwilling to cure the deficiencies in his pleadings, it is unnecessary for the Court to allow any further amendment. *See Great Plains Trust Co.,* 313 F.3d at 329 (noting that it is unnecessary to provide a plaintiff with the opportunity to cure pleading deficiencies where "it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal").

Second, and perhaps more significantly, it is apparent that any attempt to further amend his claims would be futile. For the reasons outlined here, Plaintiff's allegations, clearly demonstrate a lack of subject matter jurisdiction in this Court, and his other remaining claims are

fatally infirm.  Under these circumstances, Plaintiff has apparently already pled his best case and granting leave to amend would be futile and cause needless delay.[15]

### III.  CONCLUSION

For the foregoing reasons, the undersigned respectfully recommends that Defendant Commissioner's "Motion to Dismiss" (Docket No. 19) be **GRANTED** and that this action be **DISMISSED**.

### NOTICE TO THE PARTIES

The Clerk shall send a copy of this Report and Recommendation to Plaintiff and counsel for Defendant Commissioner, who have fourteen (14) days after receipt thereof to file written objections pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure.  Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in this Report and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

---

[15]  Nevertheless, should Plaintiff file timely objections to this Report and move for leave to amend, the District Court may then wish to consider whether Plaintiff's proposed amended complaint pleads sufficient factual allegations to adequately support his various claims.  If Plaintiff elects to request leave to amend, he must attach a copy of his proposed amended pleading to his motion.  Plaintiff is reminded that in signing any pleading, he is representing to the Court that "it is not being presented for any improper purpose" and that "the factual contentions have evidentiary support."  FED. R. CIV. P. 11(b).  Any violation of these representations may result in sanctions.  FED. R. CIV. P. 11(c).  For example, Plaintiff should address his failure to serve the other named defendants in this action.  "Pro se status does not excuse a litigant's complete failure to effect service."  *Sys. Signs Supplies v. U.S. Dep't of Just.*, 903 F.2d 1011, 1013 (5th Cir. 1990) (citing *Kersh v. Derozier*, 851 F.2d 1509, 1512 (5th Cir. 1988)).  Furthermore, "[i]f service is not perfected within 120 days of filing the complaint and if there is no showing of good cause for failure to do so, the case is subject to dismissal without prejudice."  *Sys. Signs Supplies*, 903 F.2d at 1012.

DONE at McAllen, Texas on September 3, 2025.

_____
Nadia S. Medrano
UNITED STATES MAGISTRATE JUDGE